IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDERICK KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 4208 |
| v. ) | |
| ) | |
| RETAILERS NATIONAL BANK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Frederick King originally filed the present Complaint alleging state law claims of defamation and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 *et seq.*, in the Municipal Department – First District of the Circuit Court of Cook County, Illinois. On July 21, 2005, Defendant Retailers National Bank, n/k/a Target National Bank ("TNB"), removed this action to federal court pursuant to 28 U.S.C. § 1441(a). King now seeks to have his case remanded to state court under 28 U.S.C. § 1447(c). In opposition to King's motion, TNB contends that the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, completely preempts King's state law claims, and thus removal is proper. In the alternative, TNB contends that the Court has diversity jurisdiction over this matter. For the following reasons, the Court grants King's motion to remand.

## STANDARD

Removal of actions from state to federal court is governed by 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the

district court of the United States for the district and division embracing the place where such action is pending." In other words, "[a] defendant may remove a case to federal court if the federal district court would have original subject matter jurisdiction over the action." *Disher v. Citigroup Global Mkt., Inc.*, 419 F.3d 649, 653 (7th Cir. 2005). The defendant has the burden of establishing that an action is removable and doubts concerning removal must be resolved in favor of remand to the state court. *See Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004)*; McCoy v. General Motors Corp.,* 226 F.Supp.2d 939, 943 (N.D. Ill. 2002).

## ANALYSIS

**I.     Federal Question Jurisdiction**

TNB argues that King's claims are artfully pleaded state law claims that are completely preempted by the FCRA, and thus removal to federal court is proper. The question before the Court is not whether the FCRA preempts King's defamation claim or claim based on the Illinois Consumer Fraud and Deceptive Business Practices Act, but whether the FCRA's preemptive reach is "complete" for removal purposes.

When determining whether federal question jurisdiction exists under 28 U.S.C. § 1331 in removal actions, courts follow the well-pleaded complaint rule, that is, federal question jurisdiction exists only when a plaintiff's well-pleaded complaint raises an issue of federal law. *Hart v. Wal-Mart Stores, Inc. Assoc's. Health & Welfare Plan,* 360 F.3d 674, 678-79 (7th Cir. 2004); *see also Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (courts examine well-pleaded allegations of complaint, not potential defenses). In general, the plaintiff is the master of his own complaint and may avoid federal question jurisdiction by exclusively pleading state law claims. *Nelson v. Steward,* ___ F.3d ___, 2005

WL 2063978, *3 (7th Cir. Aug. 29, 2005). Also, a case may not be removed based on a federal defense, even if both parties recognize that the federal defense is the only issue at hand. *Id.*

There is a narrow exception to the well-pleaded complaint rule, namely, the "complete preemption doctrine." *See Hart,* 360 F.3d at 678; *see also Beneficial Nat'l Bank,* 539 U.S. at 6-7. Under the complete preemption doctrine, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). The touchstone of complete preemption is Congress' clear intent to make causes of action within the scope of an Act removable to federal court. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66-67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Adkins v. Illinois Central R.R. Co.,* 326 F.3d 828, 835 (7th Cir. 2003). Complete preemption, which provides a basis for federal question jurisdiction, should not be confused with conflict preemption, which is a defense to the merits of a claim and not a basis for federal jurisdiction. *Vorhees v. Naper Aero Club, Inc.,* 272 F.3d 398, 403 (7th Cir. 2001); *see also Metropolitan Life Ins.*, 481 U.S. at 63 ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit.").

"There are only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction: the first is in the field of federal labor law and the second is in the area of federal pension law." *Vorhees,* 272 F.3d at 403. In concluding that complete preemption applied to particular provisions of the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"), the Supreme Court looked to the jurisdictional grants under each Act – both of

3

which granted exclusive federal court jurisdiction. *See Metropolitan Life Ins.,* 481 U.S. at 66-67; *Caterpillar,* 482 U.S. at 394.

The Court thus turns to the jurisdictional grant under the FCRA, which allows for concurrent jurisdiction: "An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or **in any other court of competent jurisdiction**...." 15 U.S.C. § 1681p (emphasis added); *see also Harper v. TRW, Inc.*, 881 F.Supp. 294, 299 (E.D. Mich. 1995) (FCRA's grant of concurrent jurisdiction "weighs heavily against preemption"). Because the FCRA grants concurrent jurisdiction, the Court would be hard-pressed to conclude that Congress intended for the FCRA to replace all state claims or that Congress intended the FCRA to provide for exclusive jurisdiction to the federal courts, and thus allow for removal based on complete preemption. *See Vorhees,* 272 F.3d at 403 ("The question is whether ... Congress clearly intended completely to replace state law with federal law and create a federal forum, or, more likely, if it only intended to provide a federal defense to the application of state law.").

The plain language of the two FCRA preemption sections also demonstrates that the FCRA does not completely preempt all state law claims. *See id*. at 404. Prior to the 1996 amendments to the FCRA, Section 1681h(e) governed state law actions against furnishers of credit information. *See Jordan v. Trans Union, LLC,* 377 F.Supp.2d 1307, 1308 (N.D. Ga. 2005). Section 1681h(e) provides, in relevant part:

> Except as provided in section 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against ... any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against

4

whom the user has taken adverse action, based in whole or in part on the report **except as to false information furnished with malice or willful intent to injure such consumer**.

15 U.S.C. § 1681h(e) (emphasis added). Section 1681h(e) allows for state law claims by creating an exception for common law negligence, defamation, and invasion of privacy claims where malice or willful intent to injure the consumer is involved. *See Morris v. Household Mortgage Servs., Inc.,* 350 F.Supp.2d 786, 787 (N.D. Ill. 2004). Therefore, the clear language of Section 1681h, which allows for certain state law claims, does not support the conclusion that Congress intended for the FCRA to completely preempt state law claims for purposes of removal.

Furthermore, as part of the 1996 amendments to the FCRA, Congress added another preemption provision under Section 1681t(b)(1)(F). *See Jordan,* 377 F.Supp.2d at 1308. Section 1681t states in pertinent part:

> (a) In general
>
> Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.
>
> (b) General exceptions
>
> (1) with respect to any subject matter regulated under –
>
> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies....

15 U.S.C. § 1681t(b)(1)(F). Section 1681t(b)(1)(F) sets forth a discrete preemption concerning

Section 1681s-2[1] and in no way resembles Congress' grant of complete preemption in ERISA under 29 U.S.C. § 1144. *See Watkins v. Trans Union, LLC,* 118 F.Supp.2d 1217, 1222 (N.D. Ala. 2000).

In addition, the legislative history pertaining to the 1996 additions to Section 1681t does not support sweeping preemptive intent. *See id.*; *see also Sherron v. Greenwood Trust Co.*, 977 F.Supp. 804, 808 (N.D. Miss. 1997) (nothing in FCRA's legislative history or FCRA itself establishes Congress intended to make preempted state law claims removable to federal court). As such, the Court concludes that claims within the scope of the FCRA do not completely preempt state claim claims under a removal analysis. *See Metropolitan Life Ins.*, 481 U.S. at 66.

Because no federal question appears on the face of King's Complaint and the FCRA does not completely preempt state law claims for purposes of removal, the Court does not have federal question jurisdiction over King's claims. *See Beneficial Nat'l Bank,* 539 U.S. at 6.

## II.     Diversity Jurisdiction

In the alternative, TNB contends that the Court has subject matter jurisdiction over King's claims based on diversity jurisdiction, and thus removal is proper. *See* 28 U.S.C. 1332(a). Section 1332(a) confers federal diversity jurisdiction on civil actions where there is complete diversity of citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Here, the parties do not contest that they are of diverse citizenship. Instead, in its Petition for Removal, TNB contends that, although King's Complaint and *ad damnum* seek damages between $5,000 and $15,000, TNB can establish the threshold

---

[1] The subject matter under Section 1681s-2 involves the duties imposed on entities that furnish information to consumer reporting agencies. *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

6

amount in controversy when taking potential punitive damages, other damages, and attorneys' fees into account.[2]

Therefore, at issue is whether it is legally possible that the amount in controversy meets the minimum requirement. *Workman v. United Parcel Serv., Inc.,* 234 F.3d 998, 999 (7th Cir. 2000). When a defendant removes a case to federal court, it is the defendant's burden of alleging and proving that the case is within diversity jurisdiction. *Id.* Specifically, "the removing party, must offer evidence that proves to a reasonable probability that jurisdiction, including the requisite amount in controversy, exists." *Tropp v. Western-Southern Life Ins. Co.,* 381 F.3d 591, 595 (7th Cir. 2004). Further, the removing party must show that the complaint states a claim of more than $75,000 at the time of removal. *Id.; see also Smith v. American General Life & Accident Ins. Co.*, 337 F.3d 888, 893 (7th Cir. 2003).

"The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'" *Horton v. Liberty Mutual Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573 (1961); *see also Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir. 1997) (starting point to determine jurisdictional amount is face of complaint). Indeed, the amount alleged in a plaintiff's complaint is presumed correct subject to the removing party establishing by a reasonable probability that jurisdiction exists. *Smith,* 337 F.3d at 892.

The Court thus turns to King's Complaint. First, the "Amount of Claim" in the caption

---

[2] Prior to April 25, 2005, Northern District of Illinois Local Rule 81.2 provided the required procedures regarding removal. *See Rubel v. Pfizer, Inc.,* 361 F.3d 1016, 1017-18 (7th Cir. 2004). The Local Rules Committee has withdrawn Local Rule 81.2 because "[i]t imposes burdens on the manner in which lawyers practice in state courts without significant benefit and without clear authority to do so." *See* Committee Comment to Local Rule 81.2.

7

of King's Complaint unequivocally states that he is seeking between $5,000 and $15,000 in damages. The Court also notes that King's counsel filed the present Complaint in the Municipal Department, First District, which under Cook County Circuit Court General Order 2.3(b)(1) "hears civil actions and proceedings at law seeking compensatory and consequential money damages not in excess of $30,000." *See* Committee Comment to Northern District of Illinois Local Rule 81.2, App., Assignment to Specific Division of the Court. Simply put, this maximum amount of $30,000 in damages is at odds with TNB's argument that King's Complaint states a claim for more than $75,000.

King's Complaint, however, also seeks punitive damages, "other damages," and attorneys' fees. As to the attorney's fees, only the fees incurred prior to the filing of the Complaint in state court may be considered in determining the amount in controversy. *See Smith,* 337 F.3d at 896. TNB does not discuss the amount of attorney's fees at issue,[3] but based on such limited fees when combined with the compensatory damages of $5,000 to $15,000, TNB has not established that the jurisdictional amount would be legally possible. *Hahn v. Pepsico, Inc.,* 350 F.Supp.2d 758, 764 (N.D. Ill. 2004). Moreover, TNB does not address how the "other damages" support the jurisdictional amount. Accordingly, the Court turns to the alleged punitive damages to determine if TNB has established the amount in controversy.

When punitive damages are required to satisfy the amount in controversy, the Court must first determine whether punitive damages are recoverable as a matter of state law. *Del Vecchio*

---

[3] In his Federal Rule of Civil Procedure 26(a) disclosures, King indicates that, to date, the attorney's fees total $4,200. As discussed in the body of this opinion, the Court looks to whether the amount in controversy requirements are met at the time of removal. *See Tropp v. Western-Southern Life Ins. Co.,* 381 F.3d 591, 595 (7th Cir. 2004). As such, King's Rule 26(a) disclosures cannot be used to support the threshold amount in controversy.

*v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000). Although the Illinois Supreme Court has yet to determine whether punitive damages are available as a matter of law in defamation actions, several Illinois Appellate Courts have concluded that punitive damages are recoverable in such actions. *Lowe Excavating Co. v. International Union of Operating Eng'rs*, 295 Ill.Dec. 344, 832 N.E.2d 495, 501 (Ill.App.Ct. 2005). In addition, courts may award punitive damages under the Illinois Consumer Fraud and Deceptive Business Practices Act. *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill.2d 12, 17, 280 Ill.Dec. 501, 802 N.E.2d 752 (2003).

Next, the Court must determine whether TNB has offered evidence which proves to a reasonable probability that the required amount in controversy exists. *See Smith*, 337 F.3d at 892; *see also Anthony v. Security Pacific Fin. Serv., Inc.,* 75 F.3d 311, 315 (7th Cir. 1996) (when punitive damages make up bulk of jurisdictional amount, courts scrutinize claims closely). Here, TNB argues that because King admits that his punitive damages are "substantial," the punitive damages support an amount over $75,000. TNB further argues that because King did not give an express limitation as to the punitive damages, these damages will put the amount in controversy over $75,000. Not only are these arguments specious, they fall short of TNB's burden at this procedural posture, namely, that TNB set forth competent proof to a reasonable probability that the jurisdictional amount exists. *Chase,* 110 F.3d at 427; *see also Smith*, 337 F.3d at 893 (defendant's argument that plaintiff admitted to seeking in excess of $75,000 was "particularly specious" and did not support federal jurisdiction).

In addition, TNB claims that King's Federal Rule of Civil Procedure 26(a) disclosures and requests for admissions made after removal to federal court supports the jurisdictional amount in this matter. The Court, however, looks to whether the Complaint meets the amount in

9

controversy at the time of removal, not once the proceedings are in federal court. *Tropp,* 381 F.3d at 595. Furthermore, Rule 26 disclosures and requests for admissions are typically not the documents that support removal. *See Gilardi v. Atchinson, Topeka & Santa Fe Ry. Co.*, 189 F.Supp. 82, 85 (N.D. Ill. 1960) (proper documentation includes papers from state court proceedings).

Finally, even if TNB did establish, to a reasonable probability, that punitive damages would fulfill the jurisdictional amount, the punitive damages would have to account for approximately $55,000 or 73% of the amount in controversy. In other words, King would have to recover multiple times his actual damages to satisfy $75,000 and the hopes for such "an extreme punitive damages award cannot be the sole basis for jurisdiction." *Salmi v. D.T. Mgmt., Inc.,* No. 02 C 2741, 2002 WL 31115581, *3 (N.D. Ill. Sept. 23, 2002) (citing *Anthony*, 75 F.3d at 317-18).

In summary, TNB's general assertion that "the only reasonable conclusion is that the amount in controversy exceeds $75,000," based on King's request for substantial punitive damages, his filings pursuant to Federal Rule of Civil Procedure 26(a), and requests for admissions, does not rule the day. The Court notes that King is the master of his Complaint that he filed in Cook County Municipal Court. Indeed, "a plaintiff may evade federal court by simply asking for less than the jurisdictional amount, so long as the plaintiff, should she prevail, isn't legally certain to recover more." *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993) (internal citation omitted). Because TNB's bare-boned assertions do not fulfill its burden of offering evidence that proves to a reasonable probability that the threshold jurisdictional amount existed at the time of removal, *see Tropp,* 381 F.3d at 595, the Court cannot say that

King is legally certain to recover more than $75,000.

## CONCLUSION

For these reasons, Defendant's removal to federal court was improper and the Court grants Plaintiff's motion to remand to the Municipal Department – First District of Circuit Court of Cook County.

Dated: September 19, 2005

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**